## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 19-25323-Civ-WILLIAMS/TORRES

JOSE BONILLA,

      Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social
Security Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON THE PARTIES'
## CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross motions for summary judgment filed by Jose Bonilla ("Plaintiff") [D.E. 21] and Andrew Saul, Acting Commissioner of Social Security Administration ("Defendant" or the "Government") [D.E. 24] on whether the Administrative Law Judge (the "ALJ") properly weighed the evidence presented in reaching an unfavorable decision.[1]  Under the limited standard of review that governs this case, the Court finds that substantial evidence supports the ALJ's decision.  Therefore, Plaintiff's motion for summary judgment should be **DENIED**, Defendant's motion for summary judgment should be **GRANTED**, and the ALJ's decision should be **AFFIRMED**.

---

[1]      On January 14, 2020 the Honorable Kathleen Williams referred the parties' cross-motions to the undersigned Magistrate Judge for disposition.   [D.E. 4].

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 37 years old on the onset of his alleged disability.   On March 27, 2017, Plaintiff filed an application for Social Security benefits because he was unable to work due to post-traumatic stress disorder ("PTSD"), hypervigilance, anxiety, depression, and an abscess in the groin area.   The Social Security Agency denied Plaintiff's application at the initial and reconsideration levels.   Plaintiff then requested a hearing before an ALJ that took place on November 20, 2018.[2]   The ALJ issued a decision on February 4, 2019, denying Plaintiff's application for benefits.

The ALJ found at step one of the sequential process that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.   At step two, the ALJ determined Plaintiff had the following severe impairments: a skin disorder, hypertension, obesity, gastroesophageal reflux disease, meningitis, depressive, bipolar, and related disorders, anxiety, obsessive-compulsive disorder, and PTSD. The ALJ found, however, at step three that Plaintiff did not have an impairment that met or medically equaled a listed impairment.   The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform:

> sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; occasionally balance, stoop, kneel, crouch, crawl; occasionally be exposed to extreme cold, extreme heat, wetness, humidity, hazards, and environmental irritants such as dusts, odors, fumes, and pulmonary irritants; is limited to simple and routine tasks that can be

---

[2]     The ALJ in this case was Tracey Leibowitz.

learned in 30 days or less; can occasionally interact with supervisors, co-workers, and the public.

[D.E. 10 at 20].

Proceeding to step four, the ALJ found that Plaintiff could not perform his past relevant work. However, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined at step five that there were jobs that Plaintiff could perform in the national economy. These jobs included work as a document preparer, assembler, and tuber operator. The ALJ therefore concluded at step five of the sequential process that Plaintiff was not disabled.

Following the ALJ's unfavorable decision, Plaintiff requested further review, but the Appeals Council denied that request. Plaintiff then filed this action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g). Accordingly, this action is now ripe for disposition.

## II.    STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84

F.3d 1397, 1400 (11th Cir. 1996)).

In testing for substantial evidence, the court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case).  Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and we must defer to the ALJ's decision even if the evidence may preponderate against it.  *See Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158-59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g).  However, no presumption of validity attaches to the Commissioner's conclusions of law.  *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).  The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding.   *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses.   *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).   It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence.   *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).   In determining whether the Commissioner's decision is supported

by substantial evidence, a court is not to re-weigh the evidence anew. Rather, a court is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. If a decision is supported by substantial evidence, we must affirm even if the proof preponderates against it. Therefore, a court's responsibility is to ensure that the proper legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### III.      ANALYSIS

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of producing evidence that proves he or she meets this statutory definition. "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)). The steps are followed in order to determine if the claimant is disabled. "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (internal quotation

and citation omitted).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made and the inquiry ends. *See* 20 C.F.R. § 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If the ALJ does not make such a finding, then the inquiry ends. *See* 20 C.F.R. § 404.1520(c). At step three, the ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work. *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work."). If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed, and benefits are awarded. *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work. If the claimant cannot perform past relevant work, then a prima facie case of disability is established. The ALJ assesses a claimant's RFC at this stage, based on all of the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments. *See* 20 C.F.R. § 416.945(a)(1). A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining

6

capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).   *See* 20 C.F.R. § 404.1545 ("Residual functional capacity assessment.   Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.   Your residual functional capacity is the most you can still do despite your limitations.").

When making this finding, the ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis.   Only upon the conclusion of this function-by-function analysis may an ALJ express a claimant's RFC in terms of the exertional levels of work, i.e., sedentary, light, medium, heavy, and very heavy. This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy that the claimant can perform.   *See* 20 C.F.R. § 404.1520(e)-(f).

On appeal, Plaintiff challenges the ALJ's decision in three respects: (1) that the ALJ's evaluation of the medical evidence is erroneous, (2) that the ALJ's RFC finding lacks substantial evidence, and (3) that the rationale used to reject Plaintiff's allegations is unsupported in the record.   We will consider each argument in turn.

**A.**     ***Whether Substantial Evidence Supports the Weight Assigned to Dr. Nodal***

Plaintiff's first argument is that substantial evidence does not support the weight that the ALJ assigned to the three opinions of treating psychiatrist Dr. Alina Nodal ("Dr. Nodal").   Plaintiff takes issue with the ALJ's decision to find Dr. Nodal's opinions to only be "partially persuasive," because the reasons that the ALJ articulated are unsupported in the record.   Specifically, the ALJ found that Dr. Nodal's opinions were "overly dire and conclusory," [D.E. 10 at 25] "inconsistent [with] and unsupported by the overall medical record," *id*. at 25 and partially illegible.   *Id*. at 23.   While Plaintiff admits that Dr. Nodal's opinions were difficult to read, Plaintiff contends that they were sufficiently legible to show that Plaintiff had multiple and persistent abnormalities that ran contrary to the ALJ's findings. This included findings that Plaintiff had a depressed mood, poor memory, anxiety, restlessness, poor eye contact, and impaired attention and memory.   Plaintiff also argues that Dr. Nodal's findings were consistent with other medical professionals throughout the record, giving more credibility to Plaintiff's impairments.   Because these opinions were legible and consistent with other medical evidence, Plaintiff concludes that the ALJ failed to set forth good cause for the partial rejection of Dr. Nodal.

As an initial matter, the rules for evaluating medical opinions in social security cases have changed.   Previously, the rules placed great emphasis on whether a medical opinion came from a "treating source," and the rules often

directed ALJs to give "controlling weight" to a treating source's medical opinion absent good cause.  20 C.F.R. § 404.1527(c)(2).  Yet, in March 2017, the Social Security Administration amended its regulations to abrogate the treating physician rule, among other changes.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017).

The new regulations apply to claims filed on or after March 27, 2017[3], stating that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." § 404.1520c(a).  All medical opinions are instead evaluated according to the factors listed in § 404.1520c(c), of which the most important are the supportability and consistency of the medical opinion.  *See id.*  And the Commissioner is not required to articulate how it "considered each medical opinion or prior administrative medical finding from one medical source individually."  20 C.F.R. § 404.1520c(b)(1).

Supportability refers to the relevance of "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her" opinion.  20 C.F.R. § 404.1520c(c)(1).  Consistency looks to whether "the evidence from other medical sources and nonmedical sources in the claim" are consistent with the medical opinion presented.  20 C.F.R. § 404.1520c(c)(2).  The other factors, which the ALJ is not required to consider, § 404.1520c(b)(2), concern the medical

---

[3]     Plaintiff filed his claim for disability benefits on March 27 2017, making his application subject to the revised Social Security regulations.

source's relationship with the claimant, § 404.1520c(c)(3), the medical source's specialization, § 404.1520c(c)(4), and any "other factors that tend to support or contradict a medical opinion," § 404.1520c(c)(5).[4]  *See, e.g.*, 2019 WL 3412616, *4 (E.D. Mo. July 29, 2019) ("Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness.") (citing 20 C.F.R. § 404.1520c(b)(2) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we considered medical opinions and prior administrative medical findings in [a claimant's] case record.")).   The new regulations also eliminate the term "treating source."  *Douglas P. v. Saul*, 2019 WL 3338847, at *3 (C.D. Cal. July 25, 2019) (citing 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016)).

---

[4]     The full text of 20 C.F.R. § 404.1520c provides the following:

We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.  When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.  The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).  We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

10

Thus, under the revised regulations, the ALJ *must* articulate how persuasive it finds all the medical opinions in the record, specifically articulating how it considered the supportability and consistency factors for a medical source's opinion.[5]   *See* 20 C.F.R. § 404.1520c(b).   If the ALJ finds that two or more medical opinions are equally well-supported and consistent with the record, but not the same, the ALJ must articulate how it considered other persuasive factors.   *See* 20 C.F.R. § 404.1520c(b)(3).[6]

Plaintiff complains that the ALJ's decision lacks substantial evidence because, although the ALJ noted a few abnormalities, the ALJ only found Dr. Nodal's opinions to be "partially persuasive."   [D.E. 10 at 25].   The most glaring problem with Plaintiff's argument is that it relies, in part, on the evaluation of the treating source rule under the old Social Security regulations.   Plaintiff suggests, for example, that the ALJ failed to give deference to a treating source opinion and that no good cause exists to find otherwise.   Yet, under the new regulations, the ALJ did not have to "defer or give any specific evidentiary weight including

---

[5]   The new regulations are, in some respects, consistent with prior Eleventh Circuit decisions because an ALJ could always "reject any medical opinion if the evidence supports a contrary finding."   *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (same).   "The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'"   *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008); *see also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources).

[6]   Plaintiff sidesteps any meaningful discussion of this new regulatory framework in her motion for summary judgment.

controlling weight, to any medical opinion(s)[.]"   *See* 20 C.F.R. § 404.1520c(a).   The ALJ was only required to explain how he considered the factors of supportability and consistency (unless, of course, the ALJ found that two or more medical opinions on the same issue were both equally well supported and consistent with the record).

The ALJ complied with the revised Social Security regulations and gave several reasons to discount Dr. Nodal's opinions.   The ALJ determined that Dr. Nodal's opinions were partially illegible, inconsistent with the underlying record, and conclusory.   Rather than tackling all of these reasons, Plaintiff takes aim primarily at whether Dr. Nodal's opinions were illegible.   Plaintiff's argument is unpersuasive because he failed to present any substantive reasons in opposition to the other findings that the ALJ relied upon in discounting Dr. Nodal's opinions. And without any additional argument as to these reasons, it is unclear how the ALJ's decision lacks substantial evidence.

Putting that aside, Plaintiff points to a few items in the record that support Dr. Nodal's opinions to find that the ALJ's decision lacks substantive evidence. But, "the issue is not whether an alternative decision can be supported by the record, but whether *this* decision is."   *Taylor v. Comm'r of Soc. Sec.*, 2014 WL 7273917, at *5 (M.D. Fla. Dec. 19, 2014) (emphasis in original).   Plaintiff suggests that the evidence could support a different finding, yet that is not for us to decide because so long as the "Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips,* 357 F.3d at 1240 n.8.   This means that, even if some of Dr. Nodal's

12

opinions were sufficiently legible and there was some support for the conclusions she reached, Plaintiff has not presented any other argument as to how the ALJ's decision lacks substantial evidence when those opinions were conclusory and inconsistent with the overall record.   And based on our independent review of Dr. Nodal's opinions, we find nothing that undermines the ALJ's reasons for finding them only partially persuasive.   Therefore, substantial evidence supports the weight that the ALJ assigned to Dr. Nodal.

### B.   *Whether Substantial Evidence Supports the RFC Assessment*

Plaintiff's second argument is that the ALJ erred in several respects when assessing his RFC.   Plaintiff argues that the ALJ relied on two non-examining psychologists but then reached a different conclusion that departs from their opinions.   Plaintiff suggests that this renders the ALJ's decision lacking in substantial evidence because the RFC determination is inconsistent with the opinions in the record.   Plaintiff then argues that the mental limitations in the RFC are erroneous because they fail to account for Plaintiff's depression and anxiety. And even worse, Plaintiff accuses the ALJ of "playing doctor" because the latter supplanted the role of the medical professionals in the record, interpreted the raw medical data, and drew her own conclusions apart from the evidence presented. *See Hernandez v. Barnhart*, 203 F. Supp. 2d 1341, 1355 (S.D. Fla. 2002) (finding "that the ALJ may have improperly 'played the role of medical expert, interpreted the raw psychological and medical data, and drew her own conclusions as to the claimant's RFC.'") (quoting *Marbury v. Sullivan,* 957 F.2d 837, 840–41 (11th Cir.

1992) (Johnson, J. concurring) (stating the ALJ cannot act as both a judge and a physician)); *see also Manso–Pizarro v. Secretary,* 76 F.3d 15, 17–19 (1st Cir. 1996) (noting that an ALJ, as lay person, is not qualified to interpret raw data in a medical record); *Rohrberg v. Apfel,* 26 F. Supp. 2d 303, 311 (D. Mass. 1998) (stating that when the medical findings merely diagnose the claimant's impairments and do not relate the impairments to specific residual functional capabilities such as those set out in 20 C.F.R. § 404,1567(a), the Commissioner may not make that connection himself).

An RFC is an assessment of a claimant's ability to do work despite his impairments.  *See Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997).  An ALJ makes an RFC finding based on all the "relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).  The ALJ must consider any statements by medical sources about what the claimant can still do and whether those statements are based on formal medical examinations.  The ALJ must also consider descriptions and observations of the limitations resulting from a claimant's impairments, including limitations that result from symptoms, such as pain. *Id.*  Only "acceptable medical sources" can provide medical opinions, which are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of" a claimant's impairment, including symptoms, diagnosis and prognosis, what the claimant can still do despite the impairment, and the claimant's physical or mental restrictions.  *Id.* § 404.1527(a)(2).  Ultimately, an ALJ may not make medical findings

14

herself, *see Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992), but it is her responsibility to resolve conflicting medical opinions.  *See Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984).

Plaintiff's initial argument is that the ALJ's decision is inconsistent with two non-examining psychologists because – while the ALJ found their opinions "greatly persuasive," – the ALJ did not agree with them in every respect.  This contention falls apart, at the outset, because it suggests without any authority that an ALJ is required to agree in all respects with a medical opinion for it to be relied upon.  This is, of course, not how an ALJ evaluates a medical record because a doctor can be relied upon to the extent his or her findings are consistent with other evidence in the record.  And this is what the ALJ did in this case because, although the ALJ found the opinions of two state agency consultants to be "greatly persuasive," the ALJ determined that Plaintiff was limited in additional respects through no fault of their own.[7]  Thus, there is no support for the position that the ALJ erred merely because some parts of a medical opinion were relied upon and others were not.

Plaintiff then complains that the ALJ's decision lacks substantial evidence because it identifies two mental limitations that are unsupported in the record.  [D.E. 10 at 20] (limiting Plaintiff "to simple and routine tasks that can be learned in 30 days or less," and finding that Plaintiff "can occasionally interact with

---

[7]     Plaintiff overlooks the reasons that the ALJ gave for not blindly following the opinions of the two non-examining psychologists.   The ALJ noted that the doctors "did not have the benefit of reviewing additional evidence submitted at the hearing level," and so the ALJ "further limited the claimant," to compensate for this shortfall and the other evidence in the record.   [D.E. 10 at 24].

supervisors, co-workers, and the public."). Yet, Plaintiff's argument misses the mark because the mental limitations in the RFC are supported throughout the decision and in the underlying medical evidence. Take, for example, the ALJ's summary of Dr. Nodal's "partially persuasive" medical source statement. *Id.* at 25. Dr. Nodal opined that Plaintiff had a marked ability to interact appropriately with the public, his co-workers, and supervisors. *Id.* And Dr. Nodal further noted that Plaintiff had "marked limitations to understand, remember, carry out and make judgments on simple instructions[.]" *Id.* To suggest that neither the ALJ's decision nor the medical records fail to touch upon these mental limitations is simply inaccurate.

But wait, there is more. The ALJ did not just summarize Dr. Nodal's opinions and incorporate them into the RFC. The ALJ also considered other evidence and then explained how the mental limitations were determined. For example, in determining Plaintiff's ability to interact with others, the ALJ relied on Plaintiff's own assertions where he reported that he had no problems with authority figures despite difficulties with family, friends and neighbors:

> In interacting with others, the claimant has a moderate limitation. In his functioning report, the claimant stated he has no problems with authority figures. He has problems with family, friends, and neighbors because of aggressiveness. The claimant was seen by Dr. Alina Nodal. At the visit in September 2019, he had good eye contact, logical thought processes, and alert level of consciousness. Thus, I find the claimant has no more than moderate limitations in interacting with others.

*Id.* at 19.

16

The same is true for Plaintiff's limitation to perform simple routine tasks. The ALJ found that, based on Plaintiff's own assertions, he stated that he could not concentrate, focus, or complete simple tasks. *Id*. In fact, the ALJ noted that Plaintiff's wife had to remind him to bathe. And additional evidence showed that Plaintiff was only able to pay attention for one second at a time before failing to finish what he started. *Id*. Thus, the ALJ found that Plaintiff had moderate limitations in understanding, remembering, and applying information because of his inability to follow written and spoken instructions.

We could, of course, continue to highlight additional evidence as to how the ALJ incorporated Plaintiff's mental limitations into the RFC. But, there is no need to do so when all the reasons are already provided in the ALJ's decision and the underlying medical record. It appears that Plaintiff simply disagrees with the RFC that the ALJ reached. But, that is not for us to decide because – even if we disagree with how the ALJ weighed various considerations in determining the RFC – that does not mean that the RFC lacks substantial evidence. After all, the RFC is well supported with both medical evidence and Plaintiff's own assertions, and therefore this argument lacks merit because it fails to consider the reasons that the ALJ provided in her decision.

Finally, there is no evidence that the ALJ usurped the role of a medical professional when she weighed the medical opinions in light of all the other evidence in the record. While Plaintiff may disagree with how the ALJ weighed those opinions, substantial evidence supports the weight that the ALJ gave to each

17

medical professional for the reasons already stated.   The ALJ did not interpret raw medical evidence, diagnose Plaintiff, make medical findings, or in any way act like a medical provider.   Therefore, Plaintiff's suggestion that the ALJ was "playing doctor" rings hollow because the decision shows this to be factually inaccurate.

C.   ___Whether Substantial Evidence Supports the Rejection of Plaintiff's Complaints___

Plaintiff's third argument is that the ALJ failed to properly evaluate his symptoms and allegations of pain.   The Social Security regulations provide that statements about pain or other symptoms will not alone establish that a claimant is disabled.   *See* 20 C.F.R. § 404.1529(a).   "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."   *Wilson*, 284 F.3d at 1225 (citation omitted).   An ALJ is not required to accept a claimant's subjective allegations of pain/symptoms and may properly consider the credibility of a claimant when making a determination of disability.   *See id.* at 1225-26.   If an ALJ rejects a claimant's allegations of pain, "he must articulate explicit and adequate reasons for doing so."   *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995).

A "clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."   *Id.* at 1562.   If a disability

is based on subjective evidence and a credibility determination is made against the claimant, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983). The ALJ is not required to cite "particular phrases or formulations but it cannot merely be a broad rejection" that prevents a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *See Foote*, 67 F.3d at 1561; *Jamison v. Bowen*, 814 F.2d 585, 590 (11th Cir. 1987) ("Broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable us to conclude that the ALJ considered her medical condition as a whole.").

In reaching a determination, the ALJ may consider the following factors: (1) treatment history, (2) the type, dosage, effectiveness, and side effects of any medications taken, (3) treatment taken other than medications, (4) any other measures used for relief of pain or other symptoms, (5) any precipitating and aggravating factors, (6) medical source opinions, (7) statements by the claimant or others about pain and other symptoms, (8) information about prior work, and (9) evidence of daily activities. *See* 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3). But, the ALJ is not required to discuss every aforementioned factor. *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) ("In sum, the ALJ considered Dyer's activities of daily living, the frequency of his symptoms, and the types and dosages of his medications, and concluded that Dyer's subjective complaints were inconsistent

19

with his testimony and the medical record. The ALJ thus adequately explained his reasons").

Plaintiff argues that the ALJ erred because there was insufficient consideration of the "clinical documentation of Plaintiff's abnormal mental status examinations and ongoing symptoms despite treatment with medication and counseling." [D.E. 21 at 16]. Even if we put aside the fact that this contention is entirely conclusory and could be denied for that reason alone, Plaintiff's argument is unavailing because the ALJ examined the entire record and gave detailed reasons for the conclusions she reached. The ALJ acknowledged, for instance, that Plaintiff had several mental impairments (i.e. depression, bipolar, and obsessive compulsive disorders). But, at the same time, the ALJ explained how the record did not support the limitations that Plaintiff identified because he had good eye contact logical thought processes, full orientation, no hallucinations or suicidal ideations:

> The consistency of the claimant's allegations regarding disabling symptoms and limitations, in comparison to the objective evidence, is diminished because those allegations are greater than expected in light of the objective evidence of record. The medical evidence indicates the claimant had good eye contact, steady gait, no perceptual disturbances, logical thought processes, full orientation, impaired attention and memory, concrete abstraction, and alert level of consciousness. The claimant's skin condition and abscesses were treated. His affected ear was also treated with eardrops. His blood pressure was generally within normal limits. For example, in May 2018, his blood pressure was 140/77. The positive objective clinical and diagnostic findings since the alleged onset date detailed herein do not support more restrictive functional limitations than those assessed herein.

[D.E. 10 at 24] (internal citations omitted).

Accordingly, substantial evidence supports the ALJ's credibility determinations because there is a detailed analysis of the record and Plaintiff does not otherwise raise any other specific challenges as to how the ALJ erred in rejecting his symptoms and allegations of pain. *See Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 540 (11th Cir. 2016) ("Credibility determinations are the province of the ALJ, and will not be overturned unless not supported by substantial evidence.") (citing *Moore*, 405 F.3d at 1212). Plaintiff's motion for summary judgment [D.E. 21] should therefore be **DENIED**, Defendant's motion for summary judgment [D.E. 24] should be **GRANTED**, and the ALJ's decision should be **AFFIRMED**.

## IV.   CONCLUSION

Substantial evidence supports the ALJ's findings as noted in her unfavorable decision. The ALJ applied proper legal standards and any errors therein did not prejudice Plaintiff and were harmless. For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment [D.E. 21] be **DENIED**, that Defendant's motion for summary judgment [D.E. 24] be **GRANTED**, and that the ALJ's decision be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from

21

challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 23rd day of October, 2020.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

22